IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

KIMBERLY A. TUCKER,          )
                             )
        Plaintiff,           )
                             )
v.                           )          CIVIL ACTION NO. 2:13-cv-530
                             )
SCHOOL BOARD OF THE CITY     )
OF VIRGINIA BEACH,           )
                             )
and                          )
                             )
PATTI JENKINS                )
                             )
        Defendant.           )
                             )

## REPORT AND RECOMMENDATION

Before the Court is Defendants' Motion to Dismiss, ECF No. 43, which was referred to the undersigned U.S. Magistrate Judge ("undersigned") pursuant to a Referral Order from the Chief U.S. District Judge. ECF No. 48; *see also* 28 U.S.C. §§ 636(b)(1)(B) & (C); Fed. R. Civ. P. 72(b); E.D. Va. Local Civil Rule 72. For the following reasons, the undersigned **RECOMMENDS** that Defendants' Motion to Dismiss, ECF No. 43, be **DENIED in part** and **GRANTED in part.**

## I. PROCEDURAL BACKGROUND

On September 26, 2013, *pro se* Plaintiff Kimberly Tucker filed her original complaint against the School Board, Principal Patti Jenkins, and four other individuals alleging two counts: (1) retaliation under Title VI, 42 U.S.C. § 2000d et seq. and (2) equal protection/retaliation under 42 U.S.C. § 1983. ECF No. 1 ("Original Complaint") at 7-9. Generally, Plaintiff alleged that she had been fired from her position of Assistant Principal at Lynnhaven Middle School in

1

Virginia Beach, Virginia in retaliation for her disclosure to the U.S. Department of Education Civil Rights Division of the school's non-compliance with federal special education law and because she reported discriminatory behavior. *Id.* at 3-7. Plaintiff sought reinstatement as Assistant Principal, among other requests for declaratory and monetary relief. *Id.* at 8-9. Defendants filed a motion to dismiss, ECF No. 6, and on April 15, 2014, Chief Judge Smith ordered Plaintiff to file a proposed amended complaint within twenty days. ECF No. 26. Fifteen days later, counsel entered an appearance on Plaintiff's behalf. ECF No. 27. Plaintiff then filed her motion for leave to file an amended complaint, ECF No. 31, which Chief Judge Smith granted over Defendants' opposition, and the amended complaint was filed on June 11, 2014, ECF No. 38 ("Amended Complaint"). In her Order, Chief Judge Smith found that "it does not appear at this stage that the amendment would be futile," and acknowledged Defendants' arguments regarding futility, but suggested those arguments could be "raised in [a] responsive pleading[] at the appropriate time." ECF No. 37 at 2 n.1 (suggesting Defendants could renew their motion to dismiss or file a new motion to dismiss).

In Plaintiff's Amended Complaint, only claims against the School Board and Principal Patti Jenkins remained. ECF No. 38 at 34-37. Plaintiff asserted four counts against the School Board: Count I for Race Discrimination/Retaliation under Title VII; Count II for Race Discrimination/Retaliation under Title VI; Count IV for Retaliation under the Americans with Disability Act (ADA), 42 U.S.C. § 12203; and, Count V for Retaliation under the Rehabilitation Act, 29 U.S.C. § 701. Plaintiff asserted one claim against Principal Patti Jenkins in her individual capacity—Count III—for violations of the Civil Rights Act, 42 U.S.C. § 1981. Defendants moved to dismiss Counts I, III, IV, V of the Amended Complaint, but not Count II. ECF No. 43. The parties do not dispute that Plaintiff filed her Original Complaint within the

statute of limitations, and that her claims in Courts I, IV, and V of the Amended Complaint are time-barred unless they relate back to the Original Complaint's filing date. ECF No. 44 at 1; ECF No. 45 at 7 (noting that the Amended Complaint's claims under Title VII were not brought within ninety days of the notice of right to sue letter, and ADA and the Rehabilitation Act claims were not brought within the applicable one year statute of limitations).

On July 11, 2014, Defendants filed an answer to the Amended Complaint, ECF No. 42, and filed a new motion to dismiss, ECF No. 43. Plaintiff timely filed a memorandum in opposition to Defendants' motion to dismiss, ECF No. 45, and Defendants filed a timely reply, ECF No. 47. By Referral Order dated July 25, 2014, Defendants' motion to dismiss was referred to the undersigned U.S. Magistrate Judge for recommended disposition. ECF No. 48. A hearing on the motion was held on August 8, 2014 before the undersigned. Therefore, this matter is ripe for disposition.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a) requires that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Pro 8(a). To be sufficient under Rule 8, the pleading must meet two basic requirements: it must contain sufficient factual allegations and those allegations must be plausible. *Adiscov, LLC v. Autonomy Corp.*, 762 F. Supp. 2d 826, 829 (E.D. Va. 2011) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). First, sufficient factual allegations include "more than labels and conclusions, and a formulaic recitation of the elements of the cause of action will not do;" rather, "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Second, to "nudge[] their claims across the line from conceivable to plausible," *id.* at 570, "plaintiff[s]

3

[must] plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. 678. Indeed, to achieve factual plausibility, plaintiffs must allege more than "naked assertions . . . without some further factual enhancement." *Twombly*, 550 U.S. at 557. Otherwise, the complaint will "stop[] short of the line between possibility and plausibility of entitlement to relief." *Id.*

Accordingly, "the purpose of Rule 12(b)(6) is to test the legal sufficiency of the complaint." *Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994). When considering a motion to dismiss, only those allegations which are factually plausible are "entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679 (noting that legal conclusions must be supported by factual allegations). In other words, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). "At bottom, determining whether a complaint states on its face a plausible claim for relief and therefore can survive a Rule 12(b)(6) motion will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citations omitted).

## III. ANALYSIS

Defendants asserted two grounds for dismissal. First, Defendants argued that Counts I, IV, and V of the Amended Complaint should be dismissed as time-barred. ECF No. 44 at 7-13. Specifically, Defendants asserted that Plaintiff's time-barred claims cannot relate back under Federal Rule of Civil Procedure 15(c)(1)(B) because the Amended Complaint's new facts are not sufficiently related to the facts in her Original Complaint. ECF No. 47 at 3. Second, Defendants alleged that Count III should be dismissed as wrongly brought under 42 U.S.C. § 1981 when the proper vehicle for adjudication of the claim is 42 U.S.C § 1983. ECF No. 44 at 13-14.

4

Additionally, should the Court agree with Defendants and find Count III improperly brought under 42 U.S.C. § 1981, Defendants asked this Court to deny Plaintiff leave to amend, if Plaintiff should so request, because amendment would be futile. ECF No. 47 at 10 n.4.

### A. Relation Back of Amended Complaint

Under Federal Rule of Civil Procedure 15(a), leave to amend "shall be freely given when justice so requires," absent "undue delay, bad faith or dilatory motive on the part of the movant." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Amendment is futile, however, when the statute of limitations bars a cause of action. *United States v. Pittman*, 209 F.3d 314, 317 (4th Cir. 2000). Nonetheless, Federal Rule of Civil Procedure 15(c)(1)(B) ("Rule 15(c)") provides for relation back of an amendment that otherwise would be barred by the statute of limitations. Specifically, Rule 15(c) states that an amendment to a pleading will relate back to the date of the original pleading when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." *Id.* The Fourth Circuit's approach to relation back is "well-settled" and requires "(i) that there is a factual nexus between the amendments and the prior pleading, and (ii) that a defendant had sufficient notice of these new claims such that he will not suffer prejudice if the amendments are found to relate back." *Vitullo v. Mancini*, 684 F. Supp. 2d 747, 754 (E.D. Va. 2010) (citing *Goodman v. Praxair, Inc.*, 494 F.3d 458, 469-70 (4th Cir. 2007) (en banc); *Grattan v. Burnett*, 710 F.2d 160, 163 (4th Cir. 1983); *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 614 (4th Cir. 1980)).

Resolution of whether Plaintiff's Amended Complaint relates back turns on the interpretation of *Mayle v. Felix*, 545 U.S. 644 (2005) and *Grattan*, 710 F.2d 160, and the parties offered differing interpretations. Defendants argued that relation back of the Amended

Complaint is impermissible because the Amended Complaint does not correspond to the same "common core of operative facts" outlined in Plaintiff's Original Complaint. ECF No. 47 at 4. Defendants adopted this language from *Mayle v. Felix*, 545 U.S. at 664, and alleged that *Mayle's* requirement is a "higher standard for relation back under Federal Rule of Civil Procedure 15(c)" than the "more general 'factual nexus' standard" outlined in *Grattan*. ECF No. 47 at 3-4. Conversely, Plaintiff asked this Court to adopt the rationale of *Grattan*, and follow the two prong approach by requiring a "factual nexus between the amendment and original complaint" and that "the defendant had notice of the claim and will not be prejudiced by the amendment." 710 F.2d at 163; ECF No. 45 at 8-9.[1]

### 1. Requirements for Relation Back under *Mayle v. Felix* and *Grattan v. Burnett*

Defendants' reliance on the case of *Mayle v. Felix* is not entirely misplaced, but it is incorrect to the extent that Defendants asserted that *Mayle* created a heightened standard for relation back and that courts have refused to apply *Grattan* since *Mayle*. In the context of reviewing a federal *habeas* motion, the Supreme Court stated that Rule 15(c)'s requirement that the pleading relate to the same "conduct, transaction, or occurrence," does not mean the same "trial, conviction, or sentence." *Mayle*, 545 U.S. at 664. *Mayle's* holding was limited to Rule

---

[1] Additionally, Defendants argued that the Court should not "apply the relation-back principles of Federal Rule of Civil Procedure 15(c) more leniently to [Plaintiff] because she was *pro se* when she filed her Original Complaint." ECF No. 47 at 7. It is established that "[i]n order to ensure access to this Court, a *pro se* litigant is entitled to a liberal reading of her pleading," *Jacobi v. Blocker*, 153 F.R.D. 84, 86 (E.D. Va. 1994), because "[a] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (citations omitted). The cases cited by Defendants in support of their argument that Plaintiff's pleadings should not be liberally construed dealt with the timeliness of a complaint after the plaintiff received the right to sue notice from the EEOC, and as such, are factually distinguishable. In *Baldwin*, the plaintiff simply failed to timely file the complaint even though she "was told three times what she must do to preserve her claim, and she did not do it." *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 151 (1984). In *Asbury*, the plaintiff had sufficient time to file the complaint but failed to do so. *Asbury v. City of Roanoke*, 599 F. Supp. 2d 712, 720 (2009). In both cases, the plaintiffs' untimely filing was a result of a lack of diligence, and thus was not amenable to equitable tolling. *Baldwin*, 466 U.S. at 151; *Asbury*, 599 F. Supp. 2d at 720. Here, Plaintiff was diligent in the filing of her Original Complaint within the applicable time constraints. Thus, this Court does consider Plaintiff's *pro se* status at the filing of her Original Complaint to be applicable and will liberally construe her pleadings accordingly.

15(c)'s "relation-back provision in the context of federal *habeas* proceedings," and the court found that simply because a *habeas* petitioner's claim related to his previous trial, sentence or conviction was not enough to trigger relation back under Rule 15(c).[2]   *Id.* at 656-59.   The amendment would only relate back to the date of the original claim if there was "a common core of operative facts uniting the original and newly asserted claims." *Id.* at 659. The Supreme Court gave no indication that it was creating a new standard for relation back generally; rather, it indicated that it was resolving a circuit split on how relation back applied in federal *habeas* cases. *Mayle*, 545 U.S. at 657-58 (noting that while "[t]he Ninth Circuit, whose judgment we here review, in accord with the Seventh Circuit, defines those words to allow relation back of a claim asserted in an amended petition, so long as the new claim stems from the habeas petitioner's trial, conviction, or sentence[,]. . . . [t]he majority of circuits . . . define 'conduct, transaction, or occurrence' in federal habeas cases less broadly."). Accordingly, the Supreme Court in *Mayle* did not announce a new standard for relation back in all circumstances but clarified the requirements for relation back in federal *habeas* proceedings.

Additionally, Defendants' allegation that "[f]ollowing the *Mayle* decision, district courts within the Fourth Circuit have applied the 'common core of operative facts' standard rather than the more general 'factual nexus' standard utilized in *Grattan*," ECF No. 47 at 3-4, is unfounded. Indeed, in at least four cases since *Mayle*, courts within the Fourth Circuit, including the Eastern District of Virginia, have continued to hold that *Grattan* is binding precedent and have applied

---

[2] *Mayle* was foreshadowed by *United States v. Pittman*, in which the Fourth Circuit held that a federal *habeas* petition could not relate back when the amendment added a claim arising from failure to file an appeal, and the original complaint only alleged defects arising from sentencing. *Pittman*, 209 F.3d at 317-18. The Court hinged its decision on attributes specifically relating to *habeas* petitions in refusing to find that the amendments related back simply because they arose from the petitioner's trial and sentencing. *Id.* The Court reasoned that to allow relation back in these in *habeas* petitions "would mean that amendments to a § 2255 motion would almost invariably be allowed even after the statute of limitations had expired, because most § 2255 claims arise from a criminal defendant's underlying conviction and sentence. *Id.* at 318. Moreover, "such a broad view of 'relation back' would undermine the limitations period set by Congress in AEDPA." *Id.*

its reasoning. *See Vitullo*, 684 F. Supp. 2d at 754 (stating that the two-prong approach of requiring a factual nexus and notice is "well-settled" within the Fourth Circuit); *Rogers v. Conmed, Inc.*, No. CCB-09-3397, 2010 WL 3056666, at *3 (D. Md. Aug. 3, 2010) (holding that "the Fourth's [sic] Circuit's reasoning in *Grattan*" applied and analyzing *Grattan's* two prongs); *McCormick v. Interkordsa, GMBH*, 7:05-CV-31-F, 2009 WL 2460774, at *5, 7 (E.D.N.C. Aug. 10, 2009) (noting that *Grattan* is a "case of binding precedent" and requires a "factual nexus" for relation back); *Foxworth v. United States*, 3:05CV643-JRS, 2006 WL 2008722, at *1 (E.D. Va. July 17, 2006) (citing *Grattan* for the proposition that "[i]n applying Federal Rule of Civil Procedure 15(c), the Fourth Circuit has held that an amended complaint relates back to the original complaint if there is a factual nexus. In addition, an amended claim is liberally construed to relate back to the original complaint if the Defendant had notice of the claim and will not be prejudiced by the amendment."). Furthermore, courts have used the language of *Mayle's* standard of a "core of operative facts" and *Grattan's* requirement of a "factual nexus" together without any indication that the two are different or irreconcilable standards. *Cf. McCormick*, 2009 WL2460774, at *6 (citations omitted) ("The requisite factual nexus, and therefore, relation back depends on the existence of a common core of operative facts uniting the original and newly asserted claims."); *Starr v. Van Kampen Invs., Inc.*, No. MDL-15863, 2006 WL 1581176, at *1 (D. Md. May 30, 2006) (stating that a claim will not relate back when it "relies on a new set of operative facts" or when there is no "factual nexus"); *In re E-Z Serve Convenience Stores, Inc.*, No. 02-83138, 2005 WL 4882753, at *3 (M.D.N.C. Dec. 12, 2005) (using the language of both "factual nexus" and "core of operative facts" to determine relation back).

Defendants rely predominately on two cases for the argument that this Court should disregard *Grattan*: *McCormick*, 2009 WL 2460774, and *Stidham v. Jackson*, No. 2:07cv00028, 2007 WL 2156155 (W.D. Va. July 26, 2007).[3] First, Defendants' argument that *McCormick* "applied the stricter relation-back standard articulated in *Mayle*" while refusing to apply *Grattan*, ECF No. 47 at 6, fails because *McCormick* explicitly held *Grattan* to be "binding precedent" and outlined in detail *Grattan's* requirement of a factual nexus, *McCormick* , 2009 WL 2460774, at *5, 7. Although *McCormick* did find *Grattan* to be factually distinguishable, nothing in the court's interpretation and application of *Grattan* hints that *Grattan* should no longer be applied or is irreconcilable with *Mayle*. *Id.* at *7. Indeed, *McCormick* used the very the language of both *Grattan* and *Mayle*, stating that "the requisite factual nexus" for "relation back depends on the existence of a common core of operative facts uniting the original and newly asserted claims." *Id.* at *6 (citations omitted). This statement implies that *Mayle* is not a higher standard for relation back, as Defendants asserted, but rather, it is simply an explanation of what "factual nexus" means.

Moreover, the facts in the case at hand are more similar to *Grattan* than *McCormick*. In *Grattan*, an employment discrimination case, the amended complaint added specific claims of discrimination not found in the original complaint: the original complaint alleged that the plaintiffs' dismissal from employment was "arbitrary, capricious . . . illegal and invalid" but "contained no specific allegations of race or sex discrimination." *Grattan*, 710 F.2d at 161. Even though the amended complaint in *Grattan* added new claims, because "both concern[ed] the events leading up to [plaintiffs'] termination . . . and in both the termination was the ultimate wrong of which they complained," relation back was proper. *Id.* at 163. Conversely, in

---

[3] While unreported district court opinions from other districts are of course not binding on this Court, the Court will examine Defendants' argument that these cases suggest *Grattan* should not be followed because it has been superseded by *Mayle*.

9

*McCormick*, the plaintiff attempted to add new negligence claims based on the installation and provision of safety procedures for a machine when the original complaint had only alleged negligence claims based on the design and manufacture of a machine. *Id.* at *6. *Grattan* is more analogous to the case at bar because it was an employment discrimination case, and in both *Grattan* and this case, the amended complaint added new claims of discrimination. Like in *Grattan*, Plaintiff here alleged wrongful termination in her Original Complaint, ECF No. 1 at 6, ¶¶ 31-38, and then later added specific claims for discrimination. Thus, the present case is very similar to *Grattan* and factually distinguishable from *McCormick*.

Defendants' second case, *Stidham*, is likewise unpersuasive. Unlike in *Stidham* in which "there [were] absolutely no facts alleged in the [original] Complaint that could establish any cause of action against the [defendant] based on the theory asserted in the Amended Complaint," 2007 WL 2156155, at *3, Plaintiff here alleged facts in her Original Complaint that could be construed to support a claim for race discrimination, *see* ECF No. 1 at 3, ¶ 14 ("The District has historically discriminated against minorities. Lynnhaven Middle School has specifically had racial issues and several EEOC and OCR complaints against them. Ten known complaints alone were filed against Patti Jenkins and/or are currently being investigated by federal agencies."); at 5, ¶ 27 ("The Defendants retaliated against Tucker because she reported discriminatory behavior. . . ."); at 6, ¶ 32-33 ("[At] [a] public hearing . . . the remarks made by the individual defendants were not privileged, but were made willfully, wantonly, and in utter disregard for Tucker's rights and were done with spite and because of personal animosity toward Tucker because she was an African American woman. . . ."). Accordingly, *Stidham* is inapposite to the case at hand because Plaintiff here alleged at least minimal facts in her Original Complaint that could support the Amended Complaint's claim for race discrimination.

## 2. Application of *Grattan's* Two-Prong Approach

Under *Grattan's* two-prong approach, the Court **FINDS** first, there is a factual nexus between Plaintiff's Amended Complaint and the Original Complaint because "[b]oth concern the events leading up to [Plaintiff's] termination at [Lynnhaven Middle School], and in both the termination was the ultimate wrong of which [she] complained." *Grattan*, 710 F.2d at 163. While the Amended Complaint provides much greater detail and adds additional counts not brought in the Original Complaint, there is a factual nexus between the two because both discuss events and occurrences that led up to Plaintiff's termination—the ultimate harm that she claims was in retaliation for her whistleblowing and because of discrimination against her race. Hence, a common core of operative facts links the Original and Amended Complaints. For instance, in her Original Complaint, Plaintiff alleged that "[a]fter [Plaintiff] began advocating for the disabled students and reporting Jenkins' failure to respond appropriately, Jenkins began a campaign of retaliation against her." ECF No. 1 at 4, ¶ 21. In her Amended Complaint, Plaintiff elaborated that she was reprimanded for putting her concerns about the lack of accommodations for disabled students in writing, ECF No. 38 at 18, ¶ 80, Principal Jenkins "screamed into Plaintiff's face" when the issue was discussed, *id.* at 20, ¶ 102, and afterwards, Principal Jenkins declined to recommend renewal of Plaintiff's employment contract as Assistant Principal, *id.* at 22, ¶ 113; *see also id.* at 23, ¶ 122, at 25, ¶ 135.  Moreover, Plaintiff alleged in her Original Complaint that remarks were made by "the individual defendants," and were motivated by "personal animosity toward [Plaintiff] because she was an African American woman." ECF No. 1 at 6, ¶ 32-33.  In her Amended Complaint, Plaintiff outlined repeated examples of statements made by Principal Jenkins regarding Plaintiff's race, ECF No. 38 at 4 ¶, 25-26, at 17 ¶, 74(d),

and discriminatory actions Plaintiff alleged were motivated by race, *id.* at 10, ¶ 35(I), at 11, ¶¶ 38, 39(d); at 12, ¶ 39(d)(viii); at 13, ¶ 42; at 15 ¶ 64-66; at 24 ¶ 130-31 Accordingly, both the Original and Amended Complaints contained the same common core of operative facts: Principal Jenkins's alleged actions of retaliation and discrimination toward Plaintiff before Plaintiff's employment was terminated.

Similarly, under the second prong of *Grattan*, the Court **FINDS** that Defendants will not be prejudiced by the amendment because they were on notice of the possible claims and liability through the EEOC charge.[4] Defendants argued that the notice and prejudice prong is of no consequence because Plaintiff failed to satisfy *Grattan's* first prong. ECF No. 47 at 6-7. Because there is a sufficient factual nexus, this argument fails. Alternatively, Defendants argued that Original Complaint did not provide notice of the race discrimination claim because it was "devoid of any mention of discrimination on the basis of race or retaliation on the basis of opposing such discrimination cannot be said to fairly provide notice." ECF No. 44 at 11. Defendants stated that "merely by asserting that there was 'discrimination' and that she 'took a stand against discrimination' – without any reference to her race – ... [does not provide] notice that the claim was one of *racial* discrimination. This position goes too far and is not supported by any case law cited by Plaintiff." *Id.* at 12.

---

[4] It is permissible for this Court to consider the EEOC charge because Plaintiff referred to it within her Amended Complaint. A court "may consider documents . . . attached to the motion to dismiss, as long as they are integral to the complaint and authentic." *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007) (citations omitted); *Priority Auto Group, Inc. v. Ford Motor Co.*, No. 2:12-cv-492, 2013 WL 2156467, at\* 4-5 (E.D. Va. May 15, 2013), *aff'd*, 2014 WL 3884135 (4th Cir. July 30, 2014). Moreover, a court is permitted to consider documents attached to an opposition to a motion to dismiss as long as the documents are "integral to, relied on, or are referenced within the pleadings." *Long v. Teradata Corp.*, No. 1:12-cv-787, 2012 WL 6026441, at \*3 n.1 (E.D. Va. Dec. 4, 2012). Although the EEOC charge was not attached to the Defendants' Motion to Dismiss, Plaintiff did attach it to her Memorandum in Opposition. ECF No. 45, attach. 1. Plaintiff referenced the EEOC charge in her Amended Complaint multiple times, ECF No. 38 at 26, ¶ 144, at 32, ¶ 202, at 33, ¶¶ 204-06, and in her Memorandum in Opposition to the Motion to Dismiss, ECF No. 45 at 11-15. Because the EEOC charge was referenced and relied upon in the pleadings, this Court may consider it.

First and foremost, Plaintiff's argument in favor of notice is directly supported by case law. In *Grattan*, the original complaint only included references to "discrimination" without any specific indication of what type of discrimination the plaintiffs were asserting. 710 F.2d at 161 (noting that the original complaint "alleged that their dismissals were arbitrary, capricious, without basis in fact or law, illegal and invalid. . . . However, their complaint contained no specific allegations of race or sex discrimination."). *Grattan* found the defendants to have notice of the discrimination claims through the EEOC charges. *Id.* at 163. Moreover, the court noted that the defendants were "[f]orewarned" by the EEOC charges, and "they should have realized that as this suit progressed, a discrimination theory might evolve." *Id.*

Here, Plaintiff attached to her Opposition Brief the EEOC charge of discrimination wherein she alleged she was "being treated disparately because of my race (black) by my immediate supervisor, Principal (white) . . . [and that I was] recommended for discharge because of my race (black), sex (female) and age (46) in violation of Title VII of the Civil Rights Act of 1964." ECF No. 45 attach. 1. Plaintiff noted that the School Board responded to the EEOC charge with a twenty-one page statement of position regarding the charges. ECF No. 45 at 11. Additionally, the Original Complaint mentioned race twice and referred to discrimination in nine paragraphs, albeit Plaintiff did not explicitly articulate race discrimination claims in her Original Complaint.

Like in *Grattan*, here, Defendants did have notice through Plaintiff's EEOC charges. Additionally, Plaintiff's Original Complaint alleged discrimination generally which was sufficient to put Defendants on notice of possible specific discrimination claims. Furthermore, Defendants failed to articulate any kind of prejudice they would face if the Amended Complaint was allowed to go forward. Without any evidence of prejudice, the Amended Complaint

satisfies *Grattan's* two-prong test because there is a factual nexus, notice of the claim, and no prejudice to Defendants. Thus, the undersigned recommends that the Court **DENY** the Motion to Dismiss Counts I, IV, and V because they properly relate back to the filing of Plaintiff's Original Complaint.

### B. 42 U.S.C. § 1981 Cause of Action

Defendants further moved that Count III be dismissed on the grounds that Plaintiff cannot sue Principal Patti Jenkins in her individual capacity under 42 U.S.C. § 1981 because § 1983 is the "exclusive federal remedy for a state actor's alleged violations of rights guaranteed by § 1981."[5] ECF No. 47 at 8. In response, Plaintiff asserted that whether § 1981 claims can be brought against individual state actors "is not well settled law within the Fourth Circuit," and thus the claim should be allowed to proceed. ECF No. 45 at 17. Specifically, Plaintiff proffered many cases within the Fourth Circuit that have allegedly not dismissed § 1981 claims on the grounds that actions against individual state actors had to proceed under § 1983. *Id.* at 20-21.

The Supreme Court in *Jett v. Dallas Independent School District* held "that the express 'action at law' provided by § 1983 for the 'deprivation of any rights, privileges or immunities secured by the Constitution and laws,' provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor." 491 U.S. 701, 735 (1989). Thus, *Jett* provided that a plaintiff must meet the requirements of § 1983 to prevail on a claim against a school board. *Id.* at 735-36 (requiring the plaintiff to show that "a[n] [official school district] custom or policy" violated his "right to make contracts"). Subsequently, Congress amended § 1981 through the Civil Rights Act of 1991 to include in subsection (c): "The rights protected by this section are protected against impairment by

---

[5] The parties do not dispute that Principal Jenkins is a state actor for purposes of § 1983 analysis. ECF No. 44 at 13-14; ECF No. 45 at 17.

nongovernmental discrimination and impairment under color of State law." 42 U.S.C. § 1981(c).

Since § 1981's amendment, seven circuits have considered whether § 1981 contains both a

protected right and an implied cause of action.  The Fourth Circuit in *Dennis v. County of

Fairfax* held that Congress did not create a cause of action against individual state actors under §

1981.  55 F.3d 151, 156 (4th Cir. 1995) (holding that "[t]o the extent that [the plaintiff's claims

of racial discrimination] were pleaded under § 1981, they run afoul of *Jett*. . . .[T]he § 1983

requirement that plaintiffs show an official policy or custom of discrimination also controls in §

1981 actions against state entities.").  Along with the Fourth Circuit, the majority of circuits to

consider this issue have held that § 1981 does not contain an implied cause of action.  While the

Third, Fifth, Sixth, Tenth, and Eleventh Circuits have held in agreement with the Fourth Circuit,

only the Ninth Circuit has held that § 1981 can provide a cause of action against a state actor

independent of § 1983.  *Compare Fed'n of African Am. Contractors v. City of Oakland*, 96 F.3d

1204, 1214 (9th Circuit 1996), *and McCormick v. Miami Univ.*, 693 F.3d 654, 661 (6th Cir.

2012); *McGovern v. City of Philadelphia*, 554 F.3d 114, 118 (3rd Cir. 2009); *Bolden v. City of

Topeka*, 441 F.3d 1129, 1137 (10th Cir. 2006); *Oden v. Okibbeha Cnty.*, 246 F.3d 459, 463-64

(5th Cir. 2001); *Butts v. Volusia Cnty.*, 222 F.3d 891, 894 (11th Cir. 2000).

Admittedly, case law within the Fourth Circuit on this issue "is somewhat murkier than

that of other circuits;" *James v. Univ. of Md.,* No. PJM 12-2830, 2013 WL 3863943, *2 n.1 (D.

Md. July 23, 2013), however, *Dennis* is binding precedent on this Court, and as recognized by

other district courts within this Circuit, still controls, *see id.* at *1-2; *Victor v. Kronmiller*, 553 F.

Supp. 2d 533, 542-43 (D. Md. 2008).  *Dennis* confirms, along with the great weight of authority

in other circuits, that although § 1981 provides a right protecting against both private and state

actors' violations, it does not provide a remedy for that violation. *Dennis*, 55 F.3d at 156.

15

Plaintiff claimed that *Jett's* holding was limited to requiring that a § 1981 claim against a state actor in his official capacity be brought under § 1983, but "left to another day" whether the Court would "prevent lawsuits under Section 1981 against state actors in their individual capacity." ECF No. 45 at 18. This argument, however, fails to see the crux of *Jett's* holding that § 1981 did not create a remedy at all, *Jett*, 491 U.S. at 735, regardless of whether the suit was brought in a defendant's individual or official capacity. When Congress has provided an explicit remedial scheme for a cause of action (here, § 1983), the Supreme Court has refused to allow a private cause of action to be implied from another statute. *See id.* at 732 (citing *Nat'l R.R. Passenger Corp. v. Nat'l Ass'n of R.R. Passengers*, 414 U.S. 453 (1974)).

> "In other words, § 1981(c) can establish equal *rights* for parties against private and state defendants without establishing equal *remedies*; the fact that § 1981(c) establishes private right of action against private defendants does not lead to the conclusion that a parallel right must exist for suits against state defendants if such actions are provided for elsewhere in the statutory scheme."

*McGovern*, 554 F.3d at 118. *Jett* does not simply apply to a § 1983 claim brought against a state actor in his official capacity; it applies more broadly to require all § 1981 claims against state actors be brought under § 1983. *McCormick*, 693 F.3d at 658-61 (holding that the Supreme Court's logic of denying a remedy in § 1981 actions against individuals in their official capacity applied to individuals sued in their personal capacity). To hold otherwise would ignore the Supreme Court's holding that § 1981 only created a protectable right, not a cause of action. Indeed, this "distinction between right and remedy is fundamental. A right is a well-founded or acknowledge claim; a remedy is the means employed to enforce a right or redress an injury." *Chelentix v. Luckenbach S.S. Co.*, 247 U.S. 372, 384 (1918). To parse the application of *Jett* on the lines that it only applied to state actors sued in their official capacity eviscerates *Jett's* holding that § 1981 contains no remedy for violations of the rights protected therein.

Moreover, the majority of courts within the Fourth Circuit to consider this issue have followed *Jett* and *Dennis's* precedent. None of the cases cited by Plaintiff for the proposition that courts within the Fourth Circuit have allowed § 1981 claims to proceed against state actors in their personal capacity independent of § 1983, ECF No. 45 at 20, are persuasive for that argument. In the majority of Plaintiff's cases, the § 1981 claims were brought alongside § 1983 claims. *See Francis v. Giacomelli*, No. WDQ-07-3034, 2008 WL 7469231, at *2 (D. Md. July 16, 2008) (stating that the race discrimination claims were brought "under § 1981 and § 1983"), *aff'd, Francis v. Giacomelli*, 588 F.3d 186 (4th Cir. 2009); *Spratley v. Hampton City Fire Dept.*, 933 F. Supp. 535, 542 & n.12 (E.D. Va. 1996) (stating that the "racial discrimination claims [were brought] under 42 U.S.C. §§ 1981 and 1983" and noting that "the Fourth Circuit has explained that the federal remedy for § 1981 claims is found within § 1983"), *aff'd*, 125 F.3d 848 (4th Cir. 1997); *Dixon v. City of Winston-Salem*, 45 F.3d 425, at *1 (4th Cir. 1995) (unpublished opinion) (stating that the discrimination claims were brought in violation of both §§ 1981 and 1983).

Other cases cited by Plaintiff discussed whether the claims brought by the plaintiffs presented potential violations of rights protected by § 1981, not whether § 1983 provided a remedy for those violations. In *Shazier v. Southwest Virginia Regional Jail*, the court considered a motion to dismiss and whether § 1981 provided a protectable right for violations by individuals, as opposed to municipalities. 2009 U.S. Dist. LEXIS 12052, at *17-20 (W.D. Va. Feb. 17, 2009). The court did not evaluate the question of whether § 1981 provided a remedy, but rather, whether the plaintiff's claim against an individual addressed a protectable right under § 1981. *Id.* Moreover, notwithstanding the important distinction between right and remedy, the plaintiffs in *Shazier* did bring the § 1981 case under § 1983. *See Shazier v. Southwest Virginia*

17

*Regional Jail Authority*, 2008 U.S. Dist. Ct. Pleadings LEXIS 6554, at ¶ 2 (W.D. Va. Sept. 19, 2008) ("This is an action pursuant to . . . 42 U.S.C. § 1983[] to redress the deprivation of rights, privileges and immunities secured to the Plaintiff . . . namely the freedom not be discriminated against due to her race. . . .). In *Harnett v. Brunswick County Public Schools, et al.*, the court considered whether the plaintiff alleged sufficient facts to make a claim for employment discrimination under § 1981 while reviewing a motion for summary judgment. No. 3:08-cv-128, 2008 U.S. Dist. LEXIS 86267, at *7-8 (E.D. Va. Oct. 24, 2008). As in *Shazier*, the court was considering the rights protected under § 1981 and not a remedy. *Id.* Furthermore, in *Organ v. City of Salisbury*, the court considered whether the plaintiffs could prove that a violation of § 1981 had occurred under summary judgment standards. 521 F. Supp. 2d 465, 498 (D. Ma. 2007), *aff'd*, 305 Fed. App'x 90 (4th Cir. 2008). The court specifically held that the plaintiffs could not establish a violation of § 1981, *id.*, so it had no need to consider whether § 1981 could provide a remedy for the violation of the statute therein. Although it is true that the courts in *Harnett* and *Organ* dismissed the § 1981 claims on grounds other than failure to bring the § 1981 claim through § 1983, that does not mean these courts were embracing the proposition that § 1981 claims can be brought independent of § 1983, or that § 1981 contains an implied cause of action. These holdings simply indicate that other grounds for dismissal were present, and the courts did not consider the § 1983 issue.

Additionally, Plaintiff misconstrued the holding of *Pettis v. Nottoway County School Board.*, No. 3:12-cv-864, 2013 WL 3063704 (E.D. Va. June 17, 2013). Plaintiff argued that in *Pettis*, "the defendants explicitly raised *Jett* as a defense to a Section 1981 claim brought against an [sic] individual school board members in their personal capacity. The court explicitly rejected that *Jett* precluded such a suit." ECF No. 45 at 21. However, Plaintiff failed to note that the

18

*Pettis* court was considering a claim brought under *both* §§ 1981 and 1983. 2013 WL 3063704, at *1 (listing plaintiff's claims and specifying that each § 1981 claim was brought alongside a § 1983 claim). Moreover, the *Pettis* Court did not reject *Jett*; rather, it cited with approval both *Dennis* and *Jett*. *Id.* at *6.

Here, Plaintiff brought her race discrimination and retaliation claim against Principal Patti Jenkins solely under 42 U.S.C. § 1981. ECF No. 38 at 35-36. *Jett* and *Dennis*, both binding on this Court, provide that "when suit is brought against a state actor, § 1983 is the 'exclusive federal remedy for violation of the rights guaranteed in § 1981.'" *Dennis*, 55 F.3d at 156 (quoting *Jett*, 491 U.S. at 773). Accordingly, if Plaintiff wished to bring a claim against Principal Patti Jenkins for violations of rights protected under § 1981, she should have done so through a § 1983 claim.

In conclusion, the undersigned recommends that this Court **GRANT** Defendants' Motion to Dismiss Count III because Plaintiff failed to bring her § 1981 claim under § 1983.[6]

## IV. RECOMMENDATION

For the reasons discussed above, the undersigned recommends that the Defendants' Motion to Dismiss, ECF No. 43, be **DENIED in part** to the extent it seeks dismissal of Counts I, IV, and V, and **GRANTED in part** to the extent it seeks dismissal of Count III.

---

[6] Additionally, although Plaintiff has yet to request leave to amend, Defendants argued in their Motion to Dismiss that Plaintiff should be precluded from amending her complaint to allege a claim under § 1983 because "[s]uch an amendment would be futile, as Plaintiff cites no facts from which to infer an official policy or custom on the part of the School Board." ECF No. 47 at 10. Notably, the Supreme Court has outlined the different standards required under § 1983 depending on whether an individual is sued in his personal or official capacity. When an individual is sued in her personal capacity, the proper standard under § 1983 requires the plaintiff to show "that the [state actor], acting under color of state law, caused the deprivation of a federal right." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). On the other hand, when an individual is sued in her official capacity, the plaintiff must demonstrate that the official acted according to an official policy or custom. *Id.* Here, Defendants confused the requirements for personal and official capacity suits. Because Plaintiff sued Principal Jenkins in her *personal* capacity, any futility of a proposed amendment would be measured by whether Principal Jenkins deprived Plaintiff of a federal right while acting under the color of state law. Inasmuch as Plaintiff contended that § 1981 was a proper vehicle to bring a personal capacity claim, she did not tailor her allegations to comport with § 1983. Since she has not moved for leave to amend her complaint, thereby permitting the Court to determine whether any proposed amendment would be futile, the Court cannot determine at this juncture whether leave to amend yet again should be permitted.

## V. <u>REVIEW PROCEDURE</u>

By receiving a copy of this Report and Recommendation, the parties are notified that:

1. Any party may serve on the other party and file with the Clerk of the Court specific written objections to the above findings and recommendations within fourteen days from the date this report and recommendation is mailed to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C); Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure Rule 6(a). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

2. The Chief United States District Judge shall make a de novo determination of those portions of this report and recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

The Clerk is **DIRECTED** to forward a copy of this report and recommendation to the counsel of record for the Plaintiff and Defendants.

LAWRENCE R. LEONARD
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
August 29, 2014

## CLERK'S MAILING CERTIFICATE

A copy of this Report and Recommendation was mailed on this date to the following:

Mr. David Pearline
Law Office of David Pearline
1064 Laskin Road, Suite 22C
Virginia Beach, VA 23451
Counsel for Plaintiff

Ms. Ann K. Sullivan
Ms. Mellissa M. Picco
Sullivan Law Group, P.L.C.
440 Monticello Avenue, Suite 1810
Norfolk, Virginia 23510
Counsel for Defendant

Fernando Galindo,
Clerk of the Court

By: _____
Deputy Clerk

SEP 2 2014